UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

<u>**NOT FOR PUBLICATION**</u>

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and Bernard L. Madoff, | Adv. Pro. No. 11-02929 (CGM) |
| Plaintiff, | |
| v. | |
| LGT BANK IN LIECHTENSTEIN LTD., | |
| Defendant. | |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

<u>**A P P E A R A N C E S :**</u>

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:   David Sheehan
       Torello Calvani
Of Counsel:
       Dean D. Hunt

Marie L. Carlisle

*Counsel for Defendant LGT Liechtenstein*
WUERSCH & GERING LLP
100 Wall Street, 10th Floor
New York, New York 10005
By:    Gregory F. Hauser
         Jascha D. Preuss

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, LGT Bank in Liechtenstein Ltd.'s ("LGT Liechtenstein" or "Defendant"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. Defendant seeks dismissal for lack of personal jurisdiction, failure to plead a claim for subsequent transfers, and for failure to plausibly allege Defendant received BLMIS customer property. Defendant raises the "safe harbor," "good faith," and "mere conduit" defenses. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this Defendant and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on December 15, 2011. (Compl., ECF[1] No. 1). Via the complaint ("Complaint"), the Trustee seeks to recover $10,461,871 in subsequent transfers made to LGT Liechtenstein. (*Id.* ¶ 2). LGT Liechtenstein is a subsidiary of the LGT Group, a global wealth and asset management group owned by the Princely House of Liechtenstein. (*Id.* ¶¶ 3, 22.

The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma"). (*Id.* ¶ 41). Fairfield Sentry and Fairfield Sigma are considered a "feeder funds" of BLMIS because the intention of the funds were to invest in BLMIS. (*Id.* ¶¶ 2, 6).

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02929-cgm.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 35). In 2011, the Trustee settled with Fairfield Sentry. (*Id.* ¶ 40). As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property estate. (Compl. ¶ 40, ECF No. 1). The Trustee then commenced a number of adversary proceedings against subsequent transferees, like Defendant, to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Defendant argues that the Trustee has failed to plead personal jurisdiction, a claim for subsequent transfers, and that Defendant received BLMIS customer property. The Defendant raised the following affirmative defenses: "safe harbor" defense; the "mere conduit" defense; and the "good faith, for value" defense. The Trustee opposes the motion to dismiss. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

**Discussion**

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction. (Def.'s Mem. L. 8–16, ECF No. 100). In the Complaint, the Trustee argues that Defendant purposefully availed itself of the laws of the United States and New York. (Compl. ¶¶ 6–8).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin.*

*Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,*

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

 "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).   In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that Defendant "knowingly direct[ed] funds to be

invested with New York-based BLMIS through Fairfield Sentry."  (Compl. ¶ 6).  This allegation

alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-

discovery stage of litigation.  At the pre-discovery stage, the allegations need not be factually

supported.  *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir.

2013) (explaining that an averment of facts is necessary only after discovery).  That being stated,

this was not the only allegation made by the Trustee.

 In order to be subjected to personal jurisdiction in the United States, due process requires

that a defendant have sufficient minimum contacts with the forum in which defendant is sued

"'such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr.

S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

Defendant argues that the Trustee has not alleged that it has sufficient contacts with New York. (Def.'s Mem. L. 11, ECF No. 100). The Complaint suggests otherwise. In the Complaint, the Trustee alleges that LGT Liechtenstein "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry" and "knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry." (Compl. ¶ 6, ECF No. 1). The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* 09-01239 Compl. ¶ 89 (the "Fairfield Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint).

The Trustee has submitted additional evidence in response to the motion to dismiss. LGT Liechtenstein communicated regularly with FGG Personnel in New York to discuss investments with Fairfield Sentry. (Hunt Decl. Exs. 7, 9, 11, ECF No. 109). An email attests to a meeting in which Philip Toub of FGG met with Thomas Webber of LGT Liechtenstein, wherein Webber expressed that he was "kind of supsicious [sic] of [M]adoff." (Hunt Decl. ¶ 10, Exs. 7). Another email attests to Stefan Muehlmann of LGT Capital Partners Limited, LGT Liechtenstein's sister company who advises LGT Liechtenstein, asking about how FGG would handle transparency in the event they "found something [they] didn't like." *Id.* Another email memorializes a meeting between FGG and LGT Capital Partners Limited over the latter's concerns that Madoff's

attempts to avoid SEC scrutiny and that LGT Capital Partners Limited "want [for] more capacity to Madoff."  (Hunt Decl. Ex. 11).

Attached as exhibits to the Hunt Declaration, the Trustee has provided evidence that the Defendant used bank accounts in New York to send subscription payments to and receive redemption payments from Fairfield Sentry's bank account at HSBC in New York.  (Hunt Decl. Exs. 13–15, 17–24, ECF No. 109).  Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional.  *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits to personal jurisdiction in the United States when it is "free to accept or reject the proposed terms" and still chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

The Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Defendant "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from the Fairfield Sentry and Fairfield Sigma. (Compl. ¶¶ 41–45, ECF No. 1). These

allegations are directly related to their investment activities with BLMIS via Fairfield Sentry.

*Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding

that the redemption and other payments the defendants received as direct investors in a BLMIS

feeder fund arose from the New York contacts such as sending subscription agreements to New

York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and

receiving redemption payments from a Bank of New York account in New York, and were the

proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over Defendant is reasonable and "comport[s] with fair play and substantial

justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations

omitted). Factors the Court may consider include the burden on the defendants, the forum

State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and

effective relief, the interstate judicial system's interest in obtaining the most efficient resolution

of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation.

Defendant actively participated in this Court's litigation for over ten years. It is represented by

U.S. counsel, held bank accounts in New York, and "irrevocably" submitted to the jurisdiction of

New York courts' when it signed subscription agreements with the Fairfield Funds.[2] (Compl. ¶

---

[2] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the
subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this

7).  The forum and the Trustee both have a strong interest in litigating BLMIS adversary

proceedings in this Court.  *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R.

106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re*

*BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re*

*BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re*

*Fairfield Sentry Ltd.*), 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917

F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic

estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  And

by alleging that Defendant used a New York bank account, the Trustee has met his burden of

alleging jurisdiction over each transfer that received through that New York bank account.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy

into feeder funds that placed all or substantially all of their assets with Madoff Securities, they

knew where their money was going."  *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019).  The

Trustee has made a prima facie showing of personal jurisdiction with respect to all of the

Fairfield Funds subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

---

Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under
British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a
relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable.  *In Fairfield Sentry
v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB),
2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement
does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd, Fairfield Sentry Ltd. v.
Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover approximately $10,461,871 in subsequent transfers made to LGT Liechtenstein by Fairfield Sentry.  (Compl. ¶¶ 43–47, ECF No. 1).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e)),* No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013).  "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a claim to recover the subsequent transfer." *BNP Paribas,* 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* "However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in the Fairfield Complaint. (Compl. ¶ 35). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper. *See SIPC v.*

*BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger*, pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrestar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at

*6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. LGT Liechtenstein, like many subsequent transfer defendants in this SIPA proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF No. 65 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Complaint by reference, does not prejudice Defendant. If the Court were to dismiss this Complaint and permit the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Complaint, all parties would be prejudiced by delay in these already, overly-prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**BLMIS Customer Property**

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date, approximately $10,350,118 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred to Defendant[.]" and that "the equivalent of at least $111,753" was transferred from Fairfield Sentry to Fairfield Sigma, and then on to LGT Liechtenstein. (Compl. ¶¶ 41, 43). Exhibits C, D and E to the Complaint provides LGT Liechtenstein with the exact date and amount of each transfer the Trustee is seeking to recover. These exhibits provide LGT Liechtenstein with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need to review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert allegations that make it seem plausible that the LGT Liechtenstein received BLMIS monies.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Compl. ¶¶ 2; see also Fairfield Compl. ¶¶ 89, 91) ("From the beginning, to comport with Madoff's requirement for BLMIS Feeder Funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. In this case, the Trustee is not seeking to collect $5 billion from LGT Liechtenstein. He is seeking approximately $10,461,871, which easily could come from the $3 billion Fairfield received from BLMIS. If the Court were to

accept Defendant's argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that LGT Liechtenstein received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Affirmative Defenses**

LGT Liechtenstein argues that they are "mere conduits" and not subsequent transferees because the Trustee did not allege facts suggesting that LGT Liechtenstein held legal title the money it received from Fairfield Sentry or acted with discretion for using transfers it received. (Def.'s Mem. L. 34–35, ECF No. 100). The Court of Appeals for the Second Circuit held in *In re Finley* that a financial intermediary is not an "initial transferee" for purposes of § 550. *Finley v. Alexander (In re Finley)*, 130 F.3d 52, 57 (2d Cir. 1997). Some courts have applied the "dominion or control" test to subsequent transferees. *See Miller v. Porush* (In re Stratton Oakmont, Inc.), 234 B.R. 293, 313 n.9 (Bankr. S.D.N.Y. 1999) (applying the dominion and control test to subsequent transferees) (citing *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988)).

It is not "beyond doubt" that the LGT Liechtenstein was a "mere conduit." The Trustee has alleged that LGT Liechtenstein was a customer of Fairfield Sentry and Fairfield Sigma, not their clients. (Compl. ¶ 41, 43). LGT Liechtenstein signed subscription agreements with Fairfield Sentry and Fairfield Sigma, not their clients. (Id. ¶ 7). The accounts at Fairfield Sentry and Fairfield Sigma were held in the name of LGT Liechtenstein. (Hunt Decl. Ex. 2, ECF No. 109). The Trustee has plausibly alleged that LGT Liechtenstein exercised dominion and control over the investments and redemption of BLMIS customer property. Defendant is free to plead and prove otherwise at a later stage of litigation. *See Enron Corp. v. J.P. Morgan Securities Inc.* (*In re Enron Corp.*), 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) (stating that the burden of proof is on the defendant asserting a mere conduit defense); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection.").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. (Def.'s Mem. L. 22–30, ECF No. 100). Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original). Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund*

*(In re BLMIS)*, No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3

(Bankr. S.D.N.Y. Aug. 6, 2021).

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the

Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers

qualified as payments made "in connection with" securities contracts between BLMIS and its

customers.  See *Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d

Cir. 2014).  The safe harbor does not apply, by its plain terms, to transfers where the transferee is

complicit in BLMIS' fraud.  *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-

06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).  This is because "any

transferee who knew the transfers it received from Madoff Securities contained only stolen

proceeds also knew those transfers were neither settlement payments [n]or transfers in

connection with a security agreement" and therefore, § 546(e) cannot apply.[3]   *Id.*

> The safe harbor was intended, among other things, to promote the reasonable
> expectations of legitimate investors.  If an investor knew that BLMIS was not
> actually trading securities, he had no reasonable expectation that he was signing a
> contract with BLMIS for the purpose of trading securities for his account.  In that
> event, the Trustee can avoid and recover preferences and actual and constructive
> fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal

citations omitted), vacated and remanded on other grounds, *Picard v. Citibank, N.A. (In re*

*BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).  By holding that the affirmative defense provided by §

546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do

not prevent the Trustee from clawing back complicit parties' ill-gotten gains.  The district court

---

[3] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "Cohmad did not carve out a textual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms."  *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

has already determined that "those defendants who claim the protections of Section 546(e)

through a Madoff Securities account agreement but who actually knew that Madoff Securities

was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their

motions to dismiss the Trustee's claims on this ground must be denied." *Cohmad*, No. 12 MC

115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); see also *Picard v. Multi-Strategy

Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3,

2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud,

Section 546(e) d[oes] not apply as a matter of its express terms.").

On the issue of the safe harbor, the Court adopts the district court's reasoning in *Picard v.

Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767

(S.D.N.Y. Nov. 3, 2022). The Trustee has alleged that Fairfield Sentry knew the payments it

received from BLMIS were neither settlement payments nor payments in connection with a

securities contract. "The safe harbor was intended, among other things, to promote the

reasonable expectations of legitimate investors. If an investor knew that BLMIS was not

actually trading securities, he had no reasonable expectation that he was signing a contract with

BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid

and recover preferences and actual and constructive fraudulent transfers to the full extent

permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R.

13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), vacated and remanded on other

grounds, *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with dicta set forth by the Court of Appeals for the Second

Circuit. *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*,

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint contains sufficient

allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule

12(b)(6) motion.  *See Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee

has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud").  In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; see also Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud.  They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.  *See Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

LGT Liechtenstein has also raised the safe harbor defense in connection with its contract with Fairfield Sentry. Whether the safe harbor applies to the initial transfers under the theory that BLMIS' transfers to Fairfield Sentry were made in connection with Fairfield Sentry's contract with Defendant (rather than Fairfield Sentry's contract with BLMIS) is not answerable on the pleadings. The district court has already instructed this Court that such a determination is fact-specific and that the Court should make such a determination with the benefit of a "full factual record." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *24 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Defendant on account of the securities contracts between Fairfield Sentry and Defendant.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

**Good Faith**

The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.* *Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'" *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal quotation omitted).

The burden of proving good faith falls squarely on Defendants and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry. Discovery is required on this issue.

The "value" that a subsequent transferee must provide is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); accord *Enron Corp. v. Ave. Special Situations Fund II, L.P. (In re Enron Corp.)*, 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received.  The Complaint contains no mention of LGT Liechtenstein exchanging shares for consideration.  Therefore, the "value" defense is not asserted on the face of the Complaint.

Defendant argues that the payments it received were given in exchange for the redemption of shares in the Fairfield Sentry fund.  If Defendant knew at the time it redeemed its

shares that the shares were worthless, then it did not receive the subsequent transfer funds "for value" as is required under § 550. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), aff'd sub nom. *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust."). It has not yet been determined whether LGT Liechtenstein knew if the shares they redeemed from Fairfield Sentry had value.

"Value" is Defendant's burden to plead and prove. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018). Whether the Defendant gave value is a question of fact to be resolved either at the summary judgment stage or at trial. *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

Good faith is linked with whether one had knowledge of the voidability of the transfer. *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), cert. denied sub nom. *Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022). Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny the Defendant's motion on this element. Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendant's burden to plead and prove. It is a fact-intensive inquiry that requires a three-step inquiry into 1) what LGT Liechtenstein subjectively knew; 2) "whether these facts put [them] on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee[s] knew would

have led a reasonable person in the[ir] position to conduct further inquiry into a debtor-transferor's possible fraud; and 3) whether "diligent inquiry by [LGT Liechtenstein] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

### <u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



/s/ Cecelia G. Morris

_____

**Dated: February 14, 2023**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**